UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTOPHER C.,**<br><br>  Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>  Defendant. | Civ. No. 21-09667 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Christopher C. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Title II Disability Insurance Benefits ("DIB") and Title XVI supplemental social security income. Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Christopher C. was not disabled from September 7, 2015, through May 19, 2020, the date of the decision. Christopher C. claims the ALJ's decision is not supported by substantial evidence.

I find that the ALJ's decision was supported by substantial evidence. The Commissioner's decision is therefore **AFFIRMED.**

1

I.   **BACKGROUND**[1]

Christopher C. first applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") and for supplemental social security income pursuant to section 1614(a)(3)(A) of the Social Security Act on March 23, 2018, alleging disability as of September 7, 2015. (AR 15.) Christopher C.'s application was denied initially and on Reconsideration. (AR 56–107.) Christopher C. requested a hearing before an ALJ to review his application de novo. (AR 119–21.) A hearing was held on December 18, 2019, before ALJ Richard West, who issued a decision on May 19, 2020. ALJ West denied disability at step five of the sequential evaluation, on the grounds that, Christopher C. is capable of performing a broad range of sedentary work that exists in significant numbers in the national economy. (AR 19–24.)

Christopher C. requested Appeals Council Review of ALJ West's decision, but his request was denied on February 11, 2021. This denial rendered ALJ West's decision the final decision of the Commissioner. (AR 1–6.) Christopher C. then appealed that decision to this court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

II.   **DISCUSSION**

**A. Five-Step Process and this Court's Standard of Review**

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to

---

[1]   Certain citations to the record are abbreviated as follows:

DE = docket entry in this case
AR = Administrative Record (DE 6)
Pl. Br. = Plaintiff's brief in support of remand (DE 11)

2

result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).
>
> **RFC and Step 4:** Determine the claimants "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on his RFC, the claimant can return to his prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.
>
> **Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering his age, education, work experience, and RFC, is capable of performing jobs that exist

in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not

4

disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ West undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

ALJ West found that Christopher C. had not engaged in substantial gainful activity from the alleged onset date of September 7, 2015, through the date of his hearing. (AR 17.)

### Step 2

The ALJ found that Christopher C. had the following severe impairments: degenerative disc disease, osteoarthritis, and plantar fasciitis. (AR 17.) In addition, the ALJ found that he had one non-severe impairment: bipolar disorder. (AR 18.) ALJ West found that his bipolar disorder was non-severe because Christopher C. had only mild limitations in the four broad functional areas of mental functioning: 1) Understand, remember, or apply information; 2) Interact with others; 3) Concentrate, persist, or maintain pace; 4) Adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. (AR 18.)

### Step 3

With respect to his severe impairments, Christopher C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 19). ALJ West paid particular attention to medical listings 1.04 (Disorders of the spine) and 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint).

First, ALJ West declined to find that Christopher C. met the requirements of listing 1.04 (disorders of the spine) because the medical evidence did not show that Christopher C. experienced "listing level nerve root

5

compression" and because "[t]here is no evidence of spinal arachnoiditis" or of "spinal stenosis resulting in pseudoclaudication nor an inability to ambulate effectively." (AR 19.)

Second, ALJ West declined to find that Christopher C. met the requirements of listing 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint) because the record "does not demonstrate reconstructive surgery or surgical arthrodesis of a major weightbearing joint with an inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." (AR 19.)

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ West defined Christopher C.'s RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally climb ladders, ropes, or scaffolds, stoop, kneel, crouch, and crawl; and he must avoid exposure to dangerous machinery and unprotected heights.

(AR 19.)

ALJ West began his RFC analysis by explaining that he followed a two-step process in which he first determined whether Christopher C. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—[and] could reasonably be expected to produce [Christopher C.'s] pain or other symptoms." (AR 19–20.) He then explained that in the second step, he "must evaluate the intensity, persistence, and limiting effects of [Christopher C.'s] symptoms to determine the extent to which they limit [his] work-related activities." (AR 20.) To do this, he is required to look to objective medical evidence, or to the entire case record where objective medical evidence does not substantiate Christopher C.'s statements about "the intensity, persistence, and limiting effects claimant's symptoms." (AR 20.)

ALJ West concluded "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 20.) Because Christopher C.'s arguments focus primarily on the ALJ's rejection of the opinion of Dr. Nomaan Ashraf[2] and the ALJ's finding that Christopher C.'s bipolar disorder was non-severe and therefore did not impact Christopher C's RFC, I focus my summary of the record on those aspects.

The ALJ found Dr. Ashraf's opinion unpersuasive. Dr. Ashraf had opined in his "Medical Source Statement" that Christopher C. would miss work more than three times per month and was in constant pain that made him unable to sit, stand, or walk for any length of time. (AR 831–37.) ALJ West found, however, that Dr. Ashraf's opinion was inconsistent with the remainder of the record, including Dr. Ashraf's own previous opinion that Christopher C. could perform the full range of light work. (AR 22, 659.) In addition, ALJ West discounted several other pieces of record evidence that opined that Christopher C. was capable of doing the full range of light work, determining that these findings were "not consistent with the longitudinal evidence including the claimant's continued complaints of pain and difficulty with activities of daily living including driving and preparing meals." (AR 22.)

In determining that Christopher C. had no severe mental limitations, ALJ West cited a plethora of evidence from the record. Examining each of the "Paragraph B" criteria, ALJ West found that the record evidence revealed that Christopher C. had only mild limitations in all four areas. (AR 18.) What is more, Christopher C. did not seek mental health treatment until 2019, well after he had applied for disability benefits. (AR 663.) It appears mental health treatment improved Christopher C.'s symptoms, for example by helping him get significantly more sleep. (AR 679, 691.) In short, ALJ West concluded that the record evidence shows that although Christopher C. undoubtedly has

---

[2]   Sometimes misspelled "Norman Ashraft" in plaintiff's brief. (DE 11.)

difficulties, they are not severe enough to limit the type of work that he is capable of performing.

ALJ West decided this case pursuant to the "expedited process" set forth in 20 C.F.R. §§ 404.1520(h) and 416.920(h) and therefore proceeded to Step 5 without making a finding about whether Christopher C. could perform his past relevant work.

## Step 5

At step five, ALJ West explained that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 23.) Accordingly, he found that Christopher C. is not disabled under the SSA. (AR 24.)

To make this determination, ALJ West relied on Social Security Rulings that determine whether a person of a given age and experience level is capable of work. If Christopher C. were capable of performing the full range of sedentary work, a finding of not disabled would be compelled by Medical-Vocational Rule 201.27. (AR 24.) His RFC, however, includes some additional exertional limitations. ALJ West determined, however, that these minor limitations did little to erode the occupational base of jobs that Christopher C. is capable of performing. (AR 24.) ALJ West thus concluded that "[t]here are many jobs existing in significant numbers in the national economy that the claimant is able to perform." (AR 24.) ALJ West thus found Christopher C. not to be disabled under the SSA.

### C. Christopher C.'s Challenge

Christopher C. challenges the Commissioner's decision on two primary grounds. First, he argues that the RFC was not supported by substantial evidence because it discounted without sufficient reason the evidence of Dr. Ashraf. (AR 12–16.) Second, Christopher C. argues that ALJ West erred at Step 2 by failing to find that Christopher C.'s bipolar disorder was a severe limitation. (AR 16–19.) Both of these arguments fail, and I therefore AFFIRM the ALJ's decision.

### 1. Analysis

ALJ West's decision to disregard Dr. Ashraf's final January 2020 opinion as inconsistent with other record evidence and with his own prior opinion was supported by substantial evidence.

Dr. Ashraf himself earlier opined that Christopher C. was capable of light work with no further restrictions (AR 21-22, 310-12, 376-78, 424-26, 430, 445, 653-55, 659). In 2018, for example, Dr. Ashraf found that Christopher C. was capable of a full range of light work, despite evidence of "strong symptom magnification."[3] (AR 360.) The ALJ noted the evidence from 2018 which showed that Christopher C. was improving after his surgery. (AR 21.) As noted, the most recent such report dated from May 30, 2019, just seven months before the January 2020 report in question. (AR 657–61 (stating that claimant is able to return to work so long as he is not required to lift anything weighing over 15 pounds).) In his May 30, 2019 report, Dr. Ashraf reported "maximal medical improvement" following surgery. (AR 659.)

Dr. Ashraf's opinion dated January 6, 2020 (AR 831–37), however, finds Christopher C. disabled. Ashraf reports that Christopher C. is in severe pain, for which Ashraf has currently prescribed naproxen, Tylenol, and ibuprofen.[4] Ashraf reports further that Christopher C. is unable to walk a single city block without resting, that he cannot sit, stand, or walk more than a half hour without relief, that he would have to lie down for 10 minutes every hour when working, that his pain would constantly interfere with attention and concentration, and that he could occasionally lift no more than 6–10 pounds.

---

[3]   An apparent euphemism for malingering, and the ALJ seems to have interpreted it as such. (AR 21.) Dr. Ashraf noted the claimant's "self-limiting" of movement and strength, concluded that his "true maximal capabilities are therefore left to conjecture," but opined at a minimum that he could perform light category work. (AR 360.) That conclusion appears to stem from Dr. Ashraf's interpretation of the functional assessment described at p. 10, below.

[4]   Stronger painkillers had been prescribed in the past, before and around the time of surgery. Dr. Ashraf notes that other physicians have prescribed Trazodone (an antidepressant) and Olazopine (an antipsychotic).

Such conclusions would presumably have to reflect a severe decline in the claimant's condition over the previous seven months.

The January 2020 opinion consists of a form submitted after the hearing in support of the disability claim. (AR 831-37.) No explanation appears for the change in Dr. Ashraf's opinion, and there is no documentation of any rapid decline in Christopher C.'s condition. As support, the January 2020 report generically cites such diagnostic tests as X-rays and MRI evidence (AR 831); it does not indicate, however, whether any new or recent diagnostic tests had been performed since the earlier opinions were rendered. It simply states conclusions, and it is not—like, e.g., the May 30, 2019 report—supported by treatment notes and other documentation.[5] Indeed, in the January 2020 report itself, Ashraf states that his description of the symptoms and limitations would apply going back as early as September 9, 2015, the date Dr. Ashraf first treated the claimant. If so, then the earlier reports would be inexplicable.

In addition, ALJ West found that Dr. Ashraf's opinion was inconsistent with other record evidence, particularly citing reports of State agency medical consultants who analyzed the medical records. (AR 22.) For example, in April 2018, Arthur Canario, M.D., reviewed the medical records and opined that Christopher C. could return to his prior, medium-level work. (AR 22, 450.) In February 2018, Thomas Xanakis (not a physician but a physical therapist referred by Dr. Ashraf) performed a functional capacity evaluation. Xanakis noted "to a reasonable degree of biomechanical probability that these c.v. values may be compatible with a symptom magnification component to his complaints, and/or, a conscious attempt by the Examinee to portray less than maximum effort for this evaluation." (AR 649.) He concluded, however, that the claimant could, at a minimum perform light work and lift up to 20 pounds. (*Id.; see also* AR 22, 649). The state agency retained two expert physicians, Joseph Sobelman, M.D., and Jacques Gulekjian, M.D., who likewise reviewed the

---

[5] The form requests that any such test reports not already submitted to the Agency be supplied. No such reports are attached. (AR 831.)

record and concluded that Plaintiff could perform light work, even just months after his 2018 surgery. (AR 22; AR 61-63 (Sobelman, 5/22/2018); AR 84-86 (Gulekjian, 9/4/2018).) The ALJ did not swallow this evidence whole, but assessed it in context, ultimately imposing further limitations than were suggested. These reports do, however, provide further substantial evidence in support of the ALJ's conclusions.[6]

What is more, although Christopher C. testified about his pain and difficulties walking, standing, and sitting at the December 2019 hearing, he did not mention anything about a sudden worsening of symptoms and instead described a stable, if difficult, state in 2019, with a consistent level of pain and other symptoms. (AR 38-42.) This testimony fits with the treatment reports produced by Dr. Pearlman, a podiatrist, during 2019, which indicate that his foot pain, though not his back pain, improved with treatment. (AR 699, 710.) In short, ALJ West found that the medical evidence showed that Christopher C. had remained in pain, but capable of most sedentary work during 2019, when the bulk of the medical evidence was produced. The ALJ had a legitimate basis to conclude that Dr. Ashraf's January 2020 report, submitted after the hearing, came out of nowhere, and failed to support its implicit conclusion that Christopher C.'s symptoms had severely worsened since May 2019.

Finally, the ALJ's determination that Christopher C.'s bipolar disorder was non-severe was supported by substantial evidence. In his brief, Christopher C. focuses largely on the initial report of Catherine C. Shalhoub who treated plaintiff's mental health conditions starting in 2019. (Pl. Br. at 17.) This argument ignores Dr. Shalhoub's assessment that claimant's condition improved, at least somewhat, with treatment. (AR 673–96.) Even the initial

---

[6]   Christopher C. also briefly argues that ALJ West erred by finding that Christopher C. does not require a cane to ambulate. (Pl. Br. at 14–16.) Although Dr. Ashraf did indicate in his final, disregarded, opinion that Christopher C. needed a cane, he was never prescribed one. It is clearly possible for a cane to be helpful to a person who has mobility issues without being strictly required. The ALJ's finding that Christopher C. could walk without a cane was supported by substantial record evidence which the ALJ cited in his opinion. (AR 21.)

11

report that Christopher C. discusses, however, contains no evidence that Christopher C. has substantial limitations in the four areas of mental functioning and in his brief, Christopher C. does not cite any specific evidence relating to any of those four areas. The record evidence shows that Christopher C. was generally pleasant, maintained a long-term relationship with a girlfriend, attended his medical appointments, and managed his own financial affairs. In determining that Christopher C.'s mental limitations were non-severe, ALJ West considered the whole record and cited extensively from it to support his determination. (AR 18.) ALJ West's determination was thus supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. An appropriate order accompanies this Opinion.

Dated: June 24, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**